# EXHIBIT A



2600 WEST BIG BEAVER ROAD, SUITE 300
TROY, MI 48084-3312
TELEPHONE: (248) 433-7200
FACSIMILE: (248) 433-7274
http://www.dickinsonwright.com

FRANKLIN M. SMITH
FSmith@dickinsonwright.com
(248) 433-7393

November 9, 2021

*<u>Via Email and Certified Mail</u>*
*Return Receipt Requested*

Travis Crittenden
Junk Food Arcades
3050 Vaughan Drive
Cumming, GA 30041
junkfoodarcades@gmail.com

**Re:     Infringement of Hit Box, LLC's Intellectual Property Rights**

Dear Mr. Crittenden:

Please be advised that our firm represents Hit Box, LLC ("Hit Box") in matters of intellectual property. Hit Box is the owner of trade name, trademark rights, and patent rights in the "HITBOX" controller, which, as you know, is an arcade-style controller used in association with competitive gaming. As you are also certainly aware, Hit Box is in the business of designing, manufacturing and selling various gaming controllers, including the HITBOX controllers presented at the website: https://www.hitboxarcade.com/.

Hit Box's growth as a company is due in no small part to its significant investments in research, development, marketing, and the protection of its intellectual property rights. As a result of this significant investment, Hit Box has received valuable intellectual property rights in its products under U.S. Patent and Trademark law. Indeed, Hit Box has enforceable patent rights in connection with its products, including, of particular note here, U.S. Patent No. 10,022,623 ("the '623 Patent"), as well as other granted and pending patent rights covering the HITBOX and other controllers. In addition, Hit Box has registered trademark rights in the name HITBOX protected by incontestable U.S. Trademark Registration No. 4,546,002 ("the HITBOX Trademark"). I have enclosed copies of the '623 Patent and the HITBOX Trademark registration for your reference. (Exhibits 1 and 2, respectively.)

In reviewing the Junk Food Arcades ("JFA") website and other information related to JFA's products, we believe that at least JFA's Snack Box Micro (found at https://junkfoodarcades.com/collections/snack-box-micro), Snack Box V2 Buttons Only Edition (found at https://junkfoodarcades.com/collections/snack-box/products/snack-box-v2-buttons-only-edition), and the Snack Box V2 King Size Buttons Only Edition (found at https://junkfoodarcades.com/collections/snack-box/products/copy-of-snack-box-v2-king-size-buttons-only-edition-1) products (collectively, "the Infringing Products") infringe at least independent Claims 1 and 10 of the '623 Patent, as well as various dependent claims of the '623

DICKINSON WRIGHT PLLC

Trevor Crittenden
November 9, 2021
Page 2

Patent, pursuant to 35 U.S.C. § 271. While we continue to investigate and evaluate the full scope of JFA's patent infringement, we also note our concern regarding the potential likelihood of confusion associated with your SnackBox name as it relates to the HITBOX Trademark. Ultimately, if you were previously unaware, Hit Box vigorously protects its intellectual property, and takes seriously any matter in which a competitor is unlawfully utilizing Hit Box's intellectual property.

We are also aware that JFA is a premier sponsor with the intention to unilaterally display, market, sell, and otherwise distribute the Infringing Products at the upcoming CEO Fighting Game Championship from December 3-5, 2021 in Orlando, Florida. This is a serious concern for Hit Box given the potential irreparable harm to Hit Box due to JFA's sales of the Infringing Products at a premier gaming event.

In addition, the foregoing letter is not necessary to place you on notice of JFA's patent infringement. Indeed, Hit Box practices virtual marking pursuant to 35 U.S.C. § 287(a). If you are unfamiliar with Hit Box's virtual marking, we direct you to Hit Box's virtual marking website found at https://www.hitboxarcade.com/pages/patents. This website is designed so as to provide constructive notice of infringement related to Hit Box's patents, including the '623 Patent, which applies to the present dispute.

It is Hit Box's practice to respect the intellectual property rights of third parties and equally expects others to respect its intellectual property rights. After Hit Box's technical and legal team review of your products, it is our opinion that JFA's Infringing Products fall directly within the scope of the claims of the '623 Patent and thus violate Hit Box's patent rights. We are thus reaching out to seek an amicable resolution of this issue. To that end, and by way of this letter, we are inviting a dialog with JFA. To the extent JFA is not interested in engaging in such a dialogue, Hit Box intends to evaluate any and all legal enforcement options available to it to ensure that its rights in its intellectual property are protected, and that Hit Box does not suffer any irreparable harm. This is very important technology to Hit Box, and Hit Box must protect the significant investment made in its innovations, product development, and intellectual property rights.

If JFA is serious about resolving the present dispute, then, in addition to opening a dialog with me, JFA can immediately abate its current and ongoing infringement by taking the following actions:

1.  Inform the upcoming CEO Fighting Game Championships that JFA will not display, market, sell, and otherwise distribute the Infringing Products at the CEO event;

2.  Remove from sale and surrender to me any and all of the Infringing Products in your possession or under your control, or destroy all such merchandise and confirm to me in writing that you have done so;

DICKINSON WRIGHT PLLC

Trevor Crittenden
November 9, 2021
Page 3

      3.   Provide me with copies of all documents, correspondence, purchase orders, pro forma invoices, correspondence and all other records of every kind relating to your manufacture, contracting for manufacture, purchase, distribution, trafficking, sale and marketing activity with respect to the Infringing Products. Such records should include, without limitation, documents reflecting the purchase price, sale price, and/or factory price of all products purchased and/or sold by you and information detailing the number of units of the Infringing Products manufactured, the number of units of Infringing Products sold, regardless of location, including any outstanding orders of the Infringing Products;

      4.   Immediately cease and desist from trafficking, distributing, marketing, promoting, manufacturing, storing, offering for sale, and/or selling any products or merchandise that infringe the '623 Patent, including the Infringing Products; and

      5.   Provide me with a list of every wholesale, retail and/or online location owned or controlled by JFA in which the Infringing Products is or has been marketed, offered for sale, available for sale, or sold.

      If you do not take the actions listed above then Hit Box reserves the right to pursue any and all legal action available. Having received this letter, you now have actual notice of the '623 Patent and your infringement of it. In conjunction with Hit Box's constructive marking, as discussed above, there can be no doubt that any continued marketing or sale of the Infringing Products would constitute willful infringement of the '623 Patent. As a result, I direct your attention to 35 U.S.C. § 284 and its provision for enhanced damages related to willful patent infringement.

      Please contact me if you have any questions. Confirm to me in writing no later than 5:00pm Eastern Time on November 17, 2021, that you have complied in full with Hit Box's request. Nothing in this letter shall be construed as a waiver or relinquishment of any rights or remedies of Hit Box.

      Very truly yours,

**DICKINSON WRIGHT PLLC**

Franklin M. Smith

FMS/dms
Enclosures

4874-2625-4850 v3 [74428-35]

ARIZONA   CALIFORNIA   FLORIDA   ILLINOIS   KENTUCKY   MICHIGAN   NEVADA   OHIO   TENNESSEE   TEXAS   WASHINGTON DC   TORONTO

# Exhibit 1

US010022623B2

(12) **United States Patent**
Huffer et al.

(10) Patent No.: **US 10,022,623 B2**
(45) Date of Patent: **Jul. 17, 2018**

(54) **ERGONOMICALLY CORRECT GAME CONTROLLER**

(76) Inventors: **Dustin Huffer**, Anaheim, CA (US);
**Shawn Huffer**, Henderson, NV (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **13/312,847**

(22) Filed: **Dec. 6, 2011**

(65) **Prior Publication Data**

US 2012/0142420 A1 Jun. 7, 2012

**Related U.S. Application Data**

(60) Provisional application No. 61/420,245, filed on Dec. 6, 2010.

(51) **Int. Cl.**
| | |
|---|---|
| *A63F 13/00* | (2014.01) |
| *A63F 13/24* | (2014.01) |
| *A63F 13/235* | (2014.01) |

(52) **U.S. Cl.**
CPC ............ *A63F 13/24* (2014.09); *A63F 13/235* (2014.09); *A63F 2300/1018* (2013.01); *A63F 2300/1031* (2013.01); *A63F 2300/1043* (2013.01)

(58) **Field of Classification Search**
CPC .... A63F 13/06; A63F 2300/1043; G06F 3/02; G06F 3/0219

USPC ................................................. 463/9, 37, 38
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 2001/0003713 A1* | 6/2001 | Willner et al. | 463/37 |
| 2004/0224765 A1* | 11/2004 | Martinez et al. | 463/37 |
| 2005/0239524 A1* | 10/2005 | Longman et al. | 463/9 |
| 2006/0007159 A1* | 1/2006 | Lane et al. | 345/168 |
| 2007/0066394 A1* | 3/2007 | Ikeda et al. | 463/37 |
| 2007/0256913 A1* | 11/2007 | Wee et al. | 200/5 A |
| 2008/0303698 A1* | 12/2008 | Casparian et al. | 341/22 |
| 2010/0045490 A1* | 2/2010 | Odell et al. | 341/22 |

* cited by examiner

*Primary Examiner* — James S McClellan
*Assistant Examiner* — Kevin Carter
(74) *Attorney, Agent, or Firm* — Franklin M. Smith; Dickinson Wright PLLC

(57) **ABSTRACT**

A hand operated game controller for controlling a game console. Multiple push buttons are arranged on the surface of the game controller. The push buttons are placed in an arrangement that approximately matches the natural position of the fingers of the user's hands. As the user presses the buttons, control signals are sent from the buttons to the game console via wiring.

**15 Claims, 15 Drawing Sheets**





FIG. 1

PRIOR ART



FIG. 2



FIG. 3



FIG. 4



FIG. 5



FIG. 6



FIG. 7



FIG. 8



FIG. 9



FIG. 10



FIG. 11



FIG. 12



FIG. 13



FIG. 14



FIG. 15



FIG. 16



FIG. 17



FIG. 18







FIG. 19







FIG. 20



FIG. 21



FIG. 22

US 10,022,623 B2

1

# ERGONOMICALLY CORRECT GAME CONTROLLER

The present invention relates to electronic game consoles and, in particular, to controllers for electronic game consoles. This application claims the benefit of Provisional Application 61/420,245 filed Dec. 6, 2010, which is incorporated by reference herein.

## BACKGROUND OF THE INVENTION

Home video game systems are an extremely popular activity around the world. In a typical arrangement, a user operates a controller having a joystick and buttons and that is connected to a game console to control action on a monitor screen, such as the screen of a television set. While each gaming platform has its own specific design, all tend to utilize a joystick/push button arrangement. Unfortunately, the prior art placement of the buttons and utilization of the joystick is not conducive to the most efficient play. The human hand is shaped in a very specific manner with fingers positioned also in a specific manner. Prior art controllers are not designed to take advantage of the natural features of a human hand.

FIG. 1 shows a prior art Sony Playstation® Controller. Playstation® is a registered trademark of the Sony Computer Entertainment, Inc. The control buttons are labeled in the figure as shown. Buttons 40 control the left, right, up and down movement of a character across the screen. Buttons 50 control certain actions of the character. For example the triangle might control a high punch, the circle might control a low punch, a triangle might control a high kick, and an "X" might control a low kick. Buttons 60 (L1 and L2) can be configured to control various combat actions. Buttons 70 (R1 and R2) are similarly configured to control other combat actions.

What is needed is a better game controller.

## SUMMARY OF THE INVENTION

The present invention provides a hand operated game controller for controlling a game console. Multiple push buttons are arranged on the surface of the game controller. The push buttons are placed in an arrangement that approximately matches the natural position of the fingers of the user's hands. As the user presses the buttons, control signals are sent from the buttons to the game console via wiring.

## BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 shows a prior art game controller.
FIG. 2 shows a preferred embodiment of the present invention.
FIGS. 3 and 4 show a user operating a preferred embodiment of the present invention.
FIGS. 5-9 show multiple preferred embodiments of the present invention.
FIGS. 10-11 show preferred electrical connectivity.
FIGS. 12-20 show multiple preferred embodiments of the present invention.
FIG. 21 shows a wire connection between a preferred controller and a console.
FIG. 22 shows a wireless connection between a preferred controller and a console.

## DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENTS

The present invention is an alternative to traditional gaming controllers to provide greater speed and accuracy in

2

the fighting game genre. The present invention recognizes that eliminating the joystick method and utilizing an all-push-button design operated by the fingertips yields greater game efficiency in an ergonomic fashion. Hence, a significant distinction of the present invention from "arcade joysticks" is the removal of the joystick entirely and replacing it with four arcade-quality directional pushbuttons. In doing so travel time and accidental inputs are near-eliminated. Game users enjoy superior control and ease of complex movements.

FIG. 1 shows a prior art Sony Playstation® Controller 80. The control buttons are labeled in the figure as shown. The button placement, however, is arbitrary and does not logically conform to the natural contours of a human hand. FIG. 2 preferred box shaped controller 101. The buttons have been placed on backing 20 as shown. In the embodiment shown, buttons 1-4 correspond to movement buttons 40 (FIG. 1) and buttons 5-14 correspond to function buttons 50, 60 and 70 (FIG. 1) Button placement has been carefully considered so that it matches the natural contour and shape of the human hand. In this manner, a user can more precisely control the game action. This is very important for competitive gamers who are striving to achieve the highest possible score. It is much more natural to play a computer game if the button placement matches the position of the user's fingers.

FIGS. 3 and 4 give a very good illustration of the user's hands and fingers appropriately positioned over the buttons of the embodiment shown in FIG. 2. Specifically, in FIG. 3, the left hand is positioned to control the left, right, up and down motion of a character in the game. In FIG. 4, the right hand is appropriately positioned to control fighting movements and other special motions and actions. It should be noted that the right or left thumb can equally reach "up" button 4.

It should be understood that the specific placement of buttons can be modified as desired. The important consideration is that the buttons are placed so that the fingers of the hand can naturally reach the buttons with minimum effort, as shown in the figures. FIGS. 2-4 show one preferred positioning of buttons 1-15. It should be noted that the exact positioning, size and amount of buttons can be modified. It is preferable, however, that the position of the buttons are such that they conform to the natural contour and shape of the user's hands. For example, FIG. 5 shows controller 21 with buttons placed as shown. FIG. 6 shows controller 22 with buttons placed in an alternative style. FIG. 7 shows controllers 31-34 with buttons positioned as shown. FIG. 8 shows preferred controller 35 with buttons positioned as shown.

FIG. 9 shows a front view of controller 20 shown in FIG. 2. FIG. 10 shows a front see-through view of the preferred embodiment of FIG. 9. In FIGS. 10 and 11, the wiring details are displayed. FIGS. 10 and 11 show the printed circuit board (PCB) 51. In a preferred embodiment, PCB 51 is printed circuit board model no. PS360 manufactured by Akishop Corp. The PS360 PCB is an aftermarket printed circuit board which allows a user to interface with a Sony Playstation® console and an XBOX 360® console. XBOX 360® is a registered trademark of the Microsoft Corporation and refers in general to interactive game consoles. Wiring runs from the appropriate pin connections of PCB 51 to the buttons 1-15 as shown.

FIGS. 12-18 show several alternate preferred embodiments where the position of the buttons has been modified relative to each other. However, in each embodiment, the position of the buttons is arranged so that the position of the

US 10,022,623 B2

3

buttons matches the position of the user's fingers in a fashion similar to that shown above in reference to FIGS. **3** and **4**.

FIGS. **19** and **20** show alternate embodiments where the buttons for one hand are configured to match the natural arrangement of the user's fingers. In FIG. **19** the left hand controls buttons configured similar to the up, down, left and right arrows of a keyboard. In FIG. **20** the right hand controls buttons configured similar to the up, down, left and right arrows of a keyboard. FIGS. **19** and **20** show controllers that are preferable for gamers who are used to the up, down, left and right arrows of a keyboard.

The preferred embodiments of the present invention use smaller buttons than a traditional common joystick. These buttons create a more ergonomic layout for the human hand. The preferred embodiments are modeled after the curvature of the human hand so as to greatly reduce stress over time to reduce repetitive strain injuries (RSI's). They also eliminate the need to hover the hand around searching for buttons in game, and have all buttons instantly accessible to the hands.

As shown above, there are several preferred embodiments. All are closely related in design, but have differences in button placement and button quantity.

One preferred feature shown in FIG. **2** is the directional button inputs. "Left," "Right," and "Down" are controlled by the left hand, while the final direction "Up" is controlled by the right thumb. This unique placement of "Up" allows greater ease in performing advanced techniques in fighting games. It also eliminates the common mistake of accidental "Up" inputs.

Other preferred embodiments of the present invention place the important "Up" button on the left thumb in an ergonomic curvature of the human hand.

Some of the preferred embodiments use larger standard-sized 30 mm arcade pushbuttons.

As shown above, electrical wire connects the arcade pushbuttons to the controller's circuit board. Specifically, the directional input pushbuttons are linked to the corresponding directions on the circuit board.

The present invention is an instrument designed preferably for fighting video games. Its advantages can be appreciated by the beginning player through the champion tournament player. It is designed for gamers all across the globe.

It should be noted that although the figures show a modification of a Sony Playstation® game controller, it should be understood that a PCB of any existing game controller can be substituted for PCB **51**. Some of the existing game controller PCBs that can be utilized include (but are not limited to): the Xbox® controller, the Xbox 360®, Sony Playstation® 2, Sony Playstation® 3, the Nintendo Gamecube®, controller boards and kits such as the Toodles Cthulhu for Multi-Console, any existing joystick or alternative brand controller, and many more. To modify controller **101**, the printed circuit board of the prior art controller of interest is inserted into controller **101** in place of PCB **51**. For example to create a controller for Nintendo Gamecube® the PCB from the Nintendo Gamecube® is removed and placed in controller **101** in place of PCB **51**.

There are several sub categories in models of game controllers as well. For example, Sony Playstation® game controller Playstation 1 Digital H is different in structure than Playstation 1 Dual Shock A (Late Version), but follow the same principles. Also, it should be understood that the present invention can be fabricated as a stand alone item. For example, a new controller (not tied to an existing game unit) can be built using the principles disclosed above. It is only important that both hands are able to comfortably reach and

4

control the push buttons in a fashion similar to that described above and that the directional buttons are controlled by the fingers.

It should be noted that it is possible for controller **101** to be connected to console via a wire connection (such as a USB cable shown in FIG. **21**) or a wireless connection (FIG. **22**).

Although the above-preferred embodiments have been described with specificity, persons skilled in this art will recognize that many changes to the specific embodiments disclosed above could be made without departing from the spirit of the invention. For example, although FIG. **2** shows button 15 on the left side of controller **20**, it can be easily moved so that it is adjacent buttons 13 and 14. It should be noted that in the preferred embodiments the buttons of ergonomic relevance are buttons 1-12, and buttons 13-15 are merely utility buttons. Therefore, the attached claims and their legal equivalents should determine the scope of the invention.

What is claimed is:

**1**. A hand operated game controller for controlling a game console, said game controller comprising:

A. an all-push-button game controller surface being flat and extending horizontally between left and right edges and vertically between top and bottom edges, said left and right edges extending inwardly to a middle boundary line,

B. said game controller surface including a left hand position extending inwardly from said left edge to said middle boundary line and a right hand position extending inwardly from said right edge to said middle boundary line, said left hand position including four movement push buttons and said right hand position including eight function buttons, each of said buttons having a generally circular shape;

1) said four movement push buttons including a left movement button disposed closest to said left edge, a down movement button disposed between said left movement button and said middle boundary line and being the same distance to said top edge as said left movement button, a right movement button disposed between said down movement button and said middle boundary line and being closer to said bottom edge than said left and down movement buttons, and an up movement button at least partially disposed on said middle boundary line and being closer to said bottom edge than said right movement button, wherein said left, right, and down movement buttons form an arc-shape layout and said up movement button forms an elliptical-shape layout with said arc-shape layout;

2) said eight function buttons including a top row of four function buttons and a bottom row of four function buttons wherein each of said rows of function buttons includes a first function button and a second function button spaced by a pair of middle function buttons, wherein said middle function buttons are disposed closer to said top edge than said first and second function buttons, and wherein said first row of function buttons are disposed vertically and linearly adjacent to said second row of function buttons;

3) said up movement button is positioned below said first function buttons and said right movement button, said first function buttons and said right movement button being adjacent to said middle boundary line so that said up movement button can be activated with a user's left-hand thumb or the user's right-hand thumb with the left hand positioned directly over said movement but-

US 10,022,623 B2

<table>
<tr><td>5</td><td>6</td></tr>
</table>

tons and the right hand positioned directly over said function buttons as described in limitations B.1) and B.2) above; and

C. a connection means between said push buttons and said game console, wherein control signals are sent from said plurality of buttons to said game console via said wireless or wired connection means as said plurality of buttons is pushed by the user.

**2.** The hand operated controller as in claim **1** wherein said connection means is a wire connection means.

**3.** The hand operated controller as in claim **1**, wherein said connection means is USB cable.

**4.** The hand operated controller as in claim **1** wherein said connection means is a wireless connection means.

**5.** The hand operated controller as in claim **1** further comprising a game controller printed circuit board connected between said plurality of push buttons and said wireless or wired communication means.

**6.** The hand operated controller as recited in claim **1** wherein said hand operated controller is box shaped.

**7.** The hand operated controller as recited in claim **1** wherein said buttons are circular shaped.

**8.** The hand operated controller as recited in claim **1** wherein said movement buttons are spaced from said left edge at least an expanse of a distance between said left movement button and said right movement button to define a flat surface for resting of a user's palm.

**9.** The hand operated controller as recited in claim **7** wherein said up button is the largest button.

**10.** A hand operated game controller for controlling a game console, said game controller comprising:

an all-push-button game controller surface extending horizontally between left and right edges and vertically between top and bottom edges, said left and right edges extending inwardly to a middle boundary line, said controller surface consisting of:

four movement push buttons including a left movement button disposed closest to said left edge, a down movement button disposed between said left movement button and said middle boundary line and being the

same distance to said top edge as said left movement button, a right movement button disposed between said down button and said middle boundary line and being closer to said bottom edge than said left and down movement buttons, and an up movement button at least partially disposed on said middle boundary line and being closer to said bottom edge than said right movement button, wherein said left, right, and down movement buttons form an arc-shape layout and said up button forms and elliptical-shape layout with said arc-shape layout;

eight function buttons including a top row of four function buttons and a bottom row of four function buttons wherein each of said rows of function buttons includes a first function button and a second function button spaced by a pair of middle function buttons, wherein said middle function buttons are disposed closer to said top edge than said first and second function buttons and said first row of function buttons is disposed between said second row of function buttons from said top edge.

**11.** The hand operated controller as recited in claim **10** wherein each of said buttons have a circular shape and said up button being the largest and a connection means between said hand operated game controller and a game console.

**12.** The hand operated controller as recited in claim **10** including a PCB configured to operate with the game console.

**13.** The hand operated controller as recited in claim **12** wherein the game console includes at least one of an Xbox, PlayStation, or Nintendo console.

**14.** The hand operated controller as recited in claim **10** wherein said edges extend from said controller surface to a back surface and said top edge defines a top edge surface having at least one button associated with controlling an in game menu.

**15.** The hand operated controller as recited in claim **14** wherein said connection means is a cable extending from said top edge surface.

\* \* \* \* \*

Exhibit 2

# United States of America

## United States Patent and Trademark Office

# HITBOX

**Reg. No. 4,546,002**

**Registered June 10, 2014**

HUFFER, DUSTIN (UNITED STATES INDIVIDUAL)
1651 W. PAMPAS LANE #5
ANAHEIM, CA 92802

**Int. Cl.: 28**

FOR: VIDEO GAME CONTROLLERS FOR VIDEO GAME CONSOLES AND COMPUTERS, IN CLASS 28 (U.S. CLS. 22, 23, 38 AND 50).

**TRADEMARK**

FIRST USE 3-1-2011; IN COMMERCE 3-1-2011.

**PRINCIPAL REGISTER**

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

SER. NO. 85-695,133, FILED 8-3-2012.

MAUREEN DALL, EXAMINING ATTORNEY



**Deputy Director of the United States
Patent and Trademark Office**

---

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL
TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE
DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

---

**Requirements in the First Ten Years***
**What and When to File:**

> *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. *See* 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

> *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between the 9th and 10th years after the registration date.*
> *See* 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

> You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

---

**The United States Patent and Trademark Office (USPTO) will NOT send you any future notice or
reminder of these filing requirements.**

---

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the USPTO. The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. *See* 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. *See* 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.