**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**GAINESVILLE DIVISION**

| | |
|---|---|
| JUNK FOOD CUSTOM ARCADES, LLC<br><br>Plaintiff,<br><br>v.<br><br>HIT BOX LLC.<br><br>Defendant. | CIVIL ACTION NO:<br>2:21-cv-00262-RWS |

**PLAINTIFF JUNK FOOD CUSTOM ARCADES, LLC'S**
**RESPONSIVE CLAIM CONSTRUCTION MEMORANDUM**

Plaintiff Junk food Custom Arcades, LLC ("JFCA") hereby submits this memorandum in response to Defendant Hit Box, LLC's Opening *Markman* Claim Construction Brief ("HB Brf." or "Brief") [Dkt. 81], and further in support of the arguments set forth in JFCA's Opening Claim Construction Memorandum ("JFCA Op.Memo." or "Opening Memorandum"). [Dkt. 80.]

## I. PRELIMINARY COMMENTS

Hit Box begins its Brief espousing the alleged novelty and importance of the button configurations claimed in the 623 and 867 Patents. (HB Brf. at pp. 2-3.) JFCA disputes many of Hit Box's statements, but Claim Construction is not the

proper context in which to address these issues. JFCA instead will focus on the claim construction issues.

Both Parties have provided statements of the general principles governing claim construction and indefiniteness. (*See* JFCA Op.Memo. at pp. 5-8; HB Brf. at pp. 3-8.) JFCA submits that there is no material disagreement regarding these principles; instead, the difference lies in their application to the facts in this case.

## II. ANALYSIS OF DISPUTED TERMS

### A. "push button/button."[1]

| **Disputed Term** | **JFCA Proposed Construction** | **HB Proposed Construction** |
| --- | --- | --- |
| Push button/button (including movement button and function button) | Construction of "push button" in the claims of 623 Patent: "(1) A housing, the outside of which lies on the game controller surface, (2) a plunger within the housing, and (3) a switch that can be activated or deactivated by the plunger, (4) which switch is connected to the PCB[2] but not directly attached to the PCB."<br><br>Construction of "button" in claims of 867 Patent – Same as "push button" in 623 Patent | Plain and ordinary meaning, which, to a person of ordinary skill in the art ("POSITA") is, "*an object that is pressed to send a signal*." |

[1] JFCA combined this discussion with the discussion of "disposed/disposed on" in its Opening Memorandum, but addresses the arguments separately here.

[2] Printed circuit board.

| | | |
|---|---|---|
| | based on Hit Box's disavowal of broader scope. | |

JFCA showed in its Opening Memorandum how the term "push button" has a specialized meaning to a person of ordinary skill in the art ("POSITA") in the context of game controller technology. JFCA established this by reference to a number of prior art patents and patent applications. (JFCA Op.Memo. at pp. 10-13.) JFCA also showed how the term "button" in the 867 Patent should be given the same specialized meaning because the patent specification referred to the "present invention" as including "push buttons" as opposed to other types of buttons. Hit Box thus disavowed any broader interpretation. (JFCA Op.Memo. at pp. 13-15.)

Hit Box fully appreciated JFCA's arguments before filing its Brief based on JFCA's statements in the Amended Joint Claim Construction Statement ("AJCCS") [Dkt. 77 at pp. 3-4.] and the meet and confers prior to the filing of the AJCCS. Nevertheless, in its Brief, Hit Box totally fails to address JFCA's argument regarding the special meaning of "push button" and "button" derived from the patents and patent applications. Hit Box likewise totally fails to address the disavowal of scope of "button" based on the identification of "push buttons" as the "present invention."

Instead, Hit Box presses for "push button" and "button" to be given their plain and ordinary meaning as supported by uses in the specification and dictionary definitions. (HB Brf. at pp. 9-13.) This evidence, however, does not support Hit Box's proposed plain and ordinary meaning construction.

First, the specification does not explain what "push button(s)" and "button(s)" are intended to refer to in the scope of the claims, other than by limiting the scope of "button(s)" to "push button(s)." Hit Box points to a specification mention of the use of "larger standard-sized 30 MM arcade pushbuttons" as evidence that the claims cover more than "arcade pushbuttons." (HB Brf. at pp. 11-12.) But this reference simply suggests that the alleged invention covers different sizes of "arcade push buttons" not that non-push buttons somehow are covered by the claims.

Second, Hit Box's general purpose dictionary definitions, in this context, must yield to the prior art, extrinsic evidence identified by JFCA regarding the specialized meaning of "push button(s)" in the context of controllers that can be used for gaming.[3] *E.g.*, *Vanderlande Indus. Nederland BV v. I.T.C.*, 366 F.3d 1311,

[3] In contrast, as discussed below, when the constructions involve locational/directional issues (i.e., "disposed," "middle boundary" and "horizontally aligned") there are no special meanings established by industry-specific extrinsic

1321 (Fed. Cir. 2004). As the Court in *Vanderlande* stated: "a general-usage dictionary cannot overcome credible art-specific evidence of the meaning or lack of meaning of a claim term." *Id.* (citation omitted).

B. <u>/disposed/disposed on</u>

| **Disputed Term** | **JFCA Proposed Construction** | **HB Proposed Construction** |
|---|---|---|
| Disposed; disposed on | "Placed in contact with and supported by the top surface of." | Plain and ordinary meaning, which, to a POSITA is, "*located or positioned*." |

Footnote 2 of JFCA's Opening Memorandum suggested that there might not be a dispute as to the meaning of "disposed" as it is utilized in the 623 Patent. After reviewing Hit Box's Brief, JFCA can accept Hit Box's proposed construction to the extent it is a construction of "disposed" when describing the relative position of the push buttons.

However, JFCA's proposed construction should be adopted as it relates to the construction of "disposed on." JFCA's proposed construction is supported by the understandings of POSITA (i.e., dictionary definitions identified in the AJCCS and attached hereto as Exhibit 6), and consistent with the portion of the above

---

evidence, and the plain meaning as supported by dictionary definitions is appropriate.

construction of "push button" that places a portion of the housing on the gaming surface. *See supra* and JFCA Op.Memo at pp. 12-13.

Hit Box's Brief fails to address the meaning of "disposed on" as opposed to "disposed." Hit Box argues that JFCA's proposed construction would lead to a result where the same configuration of buttons would not meet the requirements of the claims if the buttons extrude through but are not placed on the gaming surface. *See* Brief at p. 19. Hit Box is correct. The plain claim language does not cover the extrusion scenario. When, for instance, Hit Box refers to "a first assemblage of buttons disposed on said first side portion . . ." (*see* HB Brf. at p. 18 citing 867 Patent), "on" should be read to mean "on," not "in" or "through." And this is precisely what JFCA's proposed construction does. If Hit Box had wanted to cover an assemblage of buttons "extruding above a top surface" but not "on" the top surface, it could have proposed language to the Patent Office covering this scenario but it did not do so.

C. "middle boundary"

| **Disputed Term** | **JFCA Proposed Construction** | **HB Proposed Construction** |
|---|---|---|
| middle boundary | "Equally distant from the left and right edges."<br><br>Defendant's proposed construction renders the term indefinite. | Plain and ordinary meaning, which, to a POSITA is, "*a dividing line at approximately the midpoint of an area.*" |

JFCA showed in its Opening Memorandum how the term "middle boundary" should be given its plain and ordinary meaning as set forth in the American Dictionary definition No. 1: "equally distant from extremes or limits." (JFCA Op.Memo. at p. 16.) JFCA also showed in its Opening Memorandum how Hit Box's proposed construction (i.e., dividing line at approximately the midpoint of an area") renders the claim indefinite and invalid. (*Id.* at pp. 17-18.)

Hit Box's Brief sheds no clarifying light to rebut JFCA's arguments regarding the indefiniteness of its proposed construction of this term. Hit Box takes the view that the "middle boundary" is the line separating the portion of the gaming surface where the left and right hands would lie. (HB Brf. at p. 14.) But this interpretation would read "middle" out of the term and would give the jury no guidance on where the "middle boundary" of the accused device must be located to fall within the scope of the claims. The jury would not know whether the "middle boundary" could be 10%, 20% or 30% away from the true middle.

Hit Box points to no evidence to support its argument. Indeed, the term "middle boundary" does not appear in the specifications of the 623 or 867 Patents. Hit Box points to Figure 7 to support its arguments, but the vertical lines appearing in the Brief are not in the actual Figure.

In short, JFCA's proposed construction is supported by the evidence, would be understandable to the jury, and would not render the claim invalid for indefiniteness.

D. "partially horizontally aligned"

| Disputed Term | JFCA Proposed Construction | HB Proposed Construction |
|---|---|---|
| Partially horizontally aligned | Indefinite | Plain and ordinary meaning, which, to a POSITA is, "*partially aligned along the horizontal axis*." |

JFCA's Opening Memorandum showed how the term "partially horizontally aligned" as it appears in Claims 1 and 16 of the 867 Patent is indefinite because the 867 Patent fails to inform, with reasonable certainty, how POSITA would understand the top row of function buttons and the bottom row of functions buttons to be "partially horizontally aligned with" each other. JFCA pointed out how a "horizontal" relationship normally is a side-by-side relationship, but instead the two rows of function buttons have a vertical (i.e., one on top of the other) relationship. (JFCA Op.Memo. at pp. 19-20.)




FIG. 2

Hit Box tries to convert a horizontal relationship into a vertical relationship by manufacturing a construction that inserts the words "horizontal axis" into the construction – "partially aligned along the horizontal axis." (HB Brf. at p. 21.) But "horizontal axis" neither is in the claim language nor supported by the intrinsic or extrinsic evidence. It is not "self evident" from Figure 9 as Hit Box contends. (HB Brf. at p. 21.) "Horizontal" in fact means "horizontal" – The American Heritage College Dictionary defines horizontal to mean "2a. parallel or in the plane of the horizon. 2b. at right angles to a vertical line." (Attached hereto as Exhibit 7.)

E. "<u>of at least one of a portion</u>"

| **Disputed Term** | **JFCA Proposed Construction** | **HB Proposed Construction** |
|---|---|---|
| "of at least one of a portion" | Indefinite | "Of at least one of a portion" must be read in conjunction with the entire claim language. when the entire limitation is read together the plain and ordinary meaning is clear to a POSITA, which is "the third arcuate shaped buttons (i.e., movement |

| | | |
|---|---|---|
| | | buttons) have similarly shaped curves to either the first or second arcuate shaped buttons (i.e., the top and bottom rows of function buttons) along the middle boundary." |

Finally, JFCA's Opening Memorandum showed how the term "of at least one of a portion" as it appears in dependent claim 2 of the 867 Patent renders that claim indefinite. The reason is that "one of a portion of an arcuate shape" could be a single button. However, a single button has no arcuate shape, much less one that could be compared to the shape of the "third arcuate shape" to determine if they are "symmetrical in curvature." (JFCA Op.Memo at pp. 21-22.)

Hit Box ignores and cannot explain the scenario where "at least one . . . portion" of an arcuate shape is a single button. Instead, Hit Box argues that "Claim 2 simply requires that the <u>buttons</u> on one side of the controller are arranged in a similar shape to the <u>buttons</u> on the opposite side of the controller, while not requiring the shape or number of buttons to be identical." (HB Brf. at p. 23 (emphasis added).) This argument assumes that "one of a portion" be construed to require multiple buttons sufficient to define an arc (i.e., at least three). However, there is no support for such argument, and Hit Box does not even try to make it.

## III. CONCLUSION

For the foregoing reasons and those set forth in the Opening Memorandum, the Court should adopt JFCA's proposed constructions and find the claims of the 623 and 867 Patents that contain the indefinite terms invalid.

Dated: December 14, 2022

HILL, KERTSCHER & WHARTON, LLP

*/s/* John L. North
John L. North (Georgia Bar No. 545580)
3625 Cumberland Blvd., Suite 1050
Atlanta, Georgia 30339
Telephone: (770) 953-0995
Facsimile: (770) 953-1358
Email: jln@hkw-law.com

*Attorney for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**GAINESVILLE DIVISION**

| | |
|---|---|
| JUNK FOOD CUSTOM ARCADES, LLC<br><br>Plaintiff,<br><br>v.<br><br>HIT BOX LLC.<br><br>Defendant. | CIVIL ACTION NO:<br>2:21-cv-00262-RWS |

I HEREBY CERTIFY on this 14th day of December, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to counsel of record.

By: *<u>/s/ John L. North</u>*
John L. North
Georgia Bar No. 545580