**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**GAINESVILLE DIVISION**

| | |
|---|---|
| JUNK FOOD CUSTOM ARCADES, LLC<br><br>*Plaintiff/Counter-Defendant,*<br><br>vs.<br><br>HIT BOX, LLC<br><br>*Defendant/Counterclaimant*. | CIVIL ACTION No: 2:21-cv-00262-RWS |

**HIT BOX, LLC'S RESPONSE TO PLAINTIFF JUNK FOOD CUSTOM ARCADES, LLC'S OPENING CLAIM CONSTRUCTION BRIEF**

## TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. ARGUMENT ..... 4

A. Disputed Claim Terms of the Asserted Patents ..... 4

1. "button" ..... 4

2. "disposed" or "disposed on" ..... 8

3. "middle boundary" ..... 11

4. "partially horizontally aligned" ..... 15

5. "of at least one of a portion" ..... 18

III. CONCLUSION ..... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Andrew Corp. v. Gabriel Elecs., Inc.*,
847 F.2d 819 (Fed. Cir. 1988) ....................14

*Bell Commc'ns Rsch., Inc. v. Vitalink Commc'ns Corp.*,
55 F.3d 615 (Fed. Cir. 1995) ....................7

*Biotec Biologische Naturverpackungen GmbH & Co. KG v. Biocorp, Inc.*,
249 F.3d 1341 (Fed. Cir. 2001) ....................17

*Cacace v. Meyer Mktg. (Macau Commercial Offshore) Co.*,
812 F. Supp. 2d 547 (S.D.N.Y. 2011) ....................17

*Epistar Corp. v. Int'l Trade Comm'n*,
566 F.3d 1321 (Fed. Cir. 2009) ....................6

*Home Diagnostics, Inc. v. LifeScan, Inc.*,
381 F.3d 1352 (Fed. Cir. 2004) ....................7

*Invitrogen Corp. v. Biocrest Mfg., L.P.*,
424 F.3d 1374 (Fed. Cir. 2005) ....................14

*Mallinckrodt, Inc. v. Masimo Corp.*,
147 F. App'x 158 (Fed. Cir. 2005) (unpublished opinion) ....................17

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
572 U.S. 898 (2014)....................14, 16, 19

*Oakley, Inc. v. Sunglass Hut Int'l*,
316 F.3d 1331 (Fed. Cir. 2003) ....................14

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) ....................7

*Summit 6, LLC v. Samsung Elecs. Co.*,
802 F.3d 1283 (Fed. Cir. 2015) ....................11

*Teleflex, Inc. v. Ficosa N. Am. Corp.*,
299 F.3d 1313 (Fed. Cir. 2002) ....................6

*Vitronics Corp. v. Conceptronic, Inc.*,
90 F.3d 1576 (Fed. Cir. 1996) ........................................................5, 6

**Statutes**

35 U.S.C. § 112 ........................................................18

35 U.S.C. § 282(a) ........................................................16

**Other Authorities**

Merriam-Webster Dictionary ........................................................5

# I. INTRODUCTION

In its Opening Brief [Dkt. 81], Hit Box, LLC ("Hit Box") proposed that the disputed claim terms be given their plain and ordinary meaning, in light of the fact that a person of ordinary skilled in the art ("POSITA") would readily understand the relatively simple claim language in the context of the specification, the file history, and, to the extent necessary, the input of widely respected dictionaries. The Asserted Patents[1] relate to a game controller designed to make the maximum use of a player's anatomy and most ergonomically efficient movements. For the following reasons, and as discussed in more detail in the remainder of this Response, Plaintiff Junk Food Custom Arcades, LLC's ("Plaintiff" or "JFCA") proposed constructions fail because they willfully ignore the intrinsic record and the purpose of the invention and, instead, improperly import limitations from the specification or, even more improperly, from an extrinsic record self-servingly fabricated by Plaintiff itself. To the extent Plaintiff asserts that certain claim terms are indefinite, or may be indefinite if Hit Box's construction is adopted, Plaintiff makes use of nothing more than attorney argument and improper assertions of opinion without even attempting to meet its high burden of proving, by clear and convincing evidence, that one skilled in the art would be unable to understand the terms with reasonable certainty.

[1] The term "Asserted Patents" collectively refers to U.S. Patent No. 10,022,623 (the "623 Patent") and U.S. Patent No. 11,369, 867 (the "867 Patent").

In brief summary, Plaintiff's arguments fail for the following reasons:

1. With respect to the claim terms "button" and "push button," Plaintiff argues for a complicated, four-part construction, dependent not upon the intrinsic record but instead upon a cherry-picked sampling of *other patents* unrelated to the Asserted Patents. In contrast, Hit Box's plain-meaning construction is faithful to the intrinsic record and the purpose of the invention.

2. With respect to the disputed terms "disposed" and "disposed on," Plaintiff simply insists that its jury-rigged construction of "button" requires the Court to ignore the commonly understood definition of these terms, as reflected in the intrinsic record and well-respected dictionaries, and to conclude that a button may be "disposed on" a gaming controller only if it rests on top of it. Again, Hit Box's plain meaning construction is faithful to the understanding of laypersons and those skilled in the art of these commonly used terms, particularly when viewed in light of the unambiguous intrinsic record.

3. With respect to the disputed term "middle boundary," Plaintiff again asks the Court to ignore the relevant record, and the language of the claims, to define this term as the precise middle of the controller. Conversely, Hit Box's plain meaning construction remains faithful to

the intrinsic record and would be understood by a POSITA as describing the area between the operative portions of the controller, where the movement and function buttons are disposed.

4. With respect to the disputed term "partially horizontally aligned," Plaintiff presents no evidentiary basis, and no analysis of any intrinsic evidence, in support of its attorney argument that the disputed term is indefinite. On the other hand, Hit Box's plain meaning construction reinforces a POSITA's understanding of the term in the context of the claims and specification.

5. With respect to the disputed term "of at least one of a portion," Plaintiff attempts to divorce the term from the surrounding claim language and instead relies upon attorney argument to assert that the term is indefinite when read in isolation, severed from its context. In contrast, Hit Box's proposed construction clarifies a POSITA's understanding and the inventors' intent as demonstrated by the intrinsic record.

## II. ARGUMENT

### A. Disputed Claim Terms of the Asserted Patents

#### 1. "button"

| Disputed Term (in the Context of Claim 1) | Hit Box's Proposed Construction | JFCA's Proposed Construction |
|---|---|---|
| **623 Patent**<br>said left hand position including four movement ***push buttons*** and said right hand position including eight function buttons, each of said ***buttons*** having a generally circular shape<br><br>**867 Patent**<br>a first assemblage of ***buttons*** disposed on said first side portion for operation with a first hand of a user and a second assemblage of ***button***[s] disposed on said second side portion for operation with a second hand of a user | The terms "button" and "push button" should be given their plain and ordinary meaning, which, to a person of ordinary skill in the art ("POSITA") is, "*an object that is pressed to send a signal.*" | Construction of "push button" in the claims of 623 Patent: "(1) A housing, the outside of which lies on the game controller surface, (2) a plunger within the housing, and (3) a switch that can be activated or deactivated by the plunger, (4) which switch is connected to the PCB but not directly attached to the PCB."<br><br>Construction of "button" in claims of 867 Patent – Same as "push button" |

Despite the well understood meaning of the terms "button" and "push button" to those skilled in the art, JFCA asks the Court for a construction that would impermissibly narrow the scope of the terms to a specific four-part structure that is not described or adopted in any relevant part of the record that the Court may properly consider, but that is, instead, advanced only to support Plaintiff's non-

infringement argument and based only upon cherry-picked patents unrelated to the Asserted Patents. Plaintiff freely admits that this is its intent. [Dkt. 80, "JFCA's Opening Brief", p. 9]. On the contrary, nothing in the intrinsic record limits the term to the particular, complex structures Plaintiff has manufactured. Indeed, without pointing to any evidence that the inventors clearly and unambiguously disavowed the plain meaning of the claim terms "button" or "push button,"[2] JFCA instead cherry picks random patents it alleges are prior art that were not cited in the file histories for either Asserted Patent, nor in JFCA's invalidity contentions, and asserts without any support that these references reflect a POSITA's understanding of the term.[3]

JFCA further asks the Court to misread *Vitronics Corp. v. Conceptronic, Inc.* as authority to rely on its cherry picked references to support its limited construction of push button. However, the *Vitronics* Court clearly instructed that intrinsic evidence is "the most significant source of the legally operative meaning of disputed claim language" and constitutes the entire "record in which the public is entitled to

---

[2] As noted in Hit Box's Opening Claim Construction Brief [Dkt. 81, ("Hit Box's Brief")], the Merriam-Webster Dictionary defines the plain and ordinary meaning of "push button" as "a small button or knob that when pushed operates something, especially by closing an electric circuit." *See* Hit Box's Brief at Exhibit 3.

[3] As an indication of the extent to which JFCA cherry picked patents to support its complicated construction, Hit Box unsurprisingly located patents from the same time period claiming and disclosing "pushbuttons" without the structural limitations JFCA claims are consistently understood in the art. *See, e.g.,* U.S. Patent No. 5,664,667 (Exhibit A)

rely." 90 F.3d 1576, 1582-1583 (Fed. Cir. 1996). For this reason, the Court stated it is improper to rely on "extrinsic evidence" unless the "intrinsic evidence" fails to provide an unambiguous definition of the scope of the claimed invention. *Id*. at 1583.

The terms "button" and "push button" are common and simple words that a juror would readily understand in the context of the intrinsic record. The patents use them in the commonly understood way. JFCA has not, and cannot, point to any intrinsic evidence, or, indeed, any proper, relevant extrinsic evidence, that demonstrates "an intent to deviate from the ordinary and accustomed meaning of a claim term…[or]…expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope." *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). Therefore, JFCA has not overcome the "heavy presumption that claim terms carry their full ordinary and customary meaning;" thus, JFCA's attempt to rely on extrinsic evidence is improper. *Epistar Corp. v. Int'l Trade Comm'n*, 566 F.3d 1321, 1334 (Fed. Cir. 2009); *Vitronics*, 90 F.3d at 1582-83.

In its only reference to intrinsic evidence for this argument, JFCA asserts that FIG. 10 in the common specification limits the Asserted Patents to a structure of buttons that are connected "but not directly attached to the PCB." JFCA's Opening Brief, p. 10 (emphasis in JFCA's Opening Brief). However, as explained in the specification, "FIG. 10 shows a front see-through view of the preferred embodiment." 623 Patent at 2:52-53; 867 Patent at 3:2-3 (emphasis added). While

FIG. 10 depicts an embodiment that has buttons not directly attached to the PCB, it would be error to limit the patent to this embodiment when nothing else in the patent supports such a limitation, even by implication. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005). ("[A]lthough the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments.").

JFCA's failure to provide any intrinsic or dictionary support for its assertion that "push button" should be construed to alter the plain and ordinary meaning of the term illustrates that JFCA's proposed construction should not be adopted.[4] JFCA cannot overcome the heavy presumption that claim terms should be interpreted using their plain and ordinary meaning. The terms "button" and "push button" are used interchangeably in the specification and merely refer to their common and simple meaning, which jurors would readily understand in the context of the patents. No

[4] To the extent that the Court is persuaded that the term "push button" should be given the detailed, four-part structural construction proposed by JFCA, Hit Box asserts that the term "button," should not be given that same construction. "Absent a clear disavowal or contrary definition in the specification or the prosecution history, the patentee is entitled to the full scope of its claim language." *Home Diagnostics, Inc. v. LifeScan, Inc.*, 381 F.3d 1352, 1358 (Fed. Cir. 2004). Nothing in the 867 Patentclearly disavows or limits the full scope of the commonly used term "button." Although the specification uses the terms "button" and "push button" interchangeably, the claims of the 867 Patent were drafted intentionally to include only "buttons," and it is "the language of the claim [that] defines the scope of the protected invention." *Bell Commc'ns Rsch., Inc. v. Vitalink Commc'ns Corp.*, 55 F.3d 615, 619 (Fed. Cir. 1995). Again, the adoption of a plain-meaning construction of these terms would most efficiently aid the finder of fact.

further construction is required. Exchanging these common words for a four-part construction that imports structure not found in the intrinsic evidence would not aid the jury, but would instead merely cause confusion. To the extent the Court believes a construction of the disputed terms will be helpful, it should be construed as "an object that is pressed to send a signal."

### 2. "disposed" or "disposed on"[5]

| Disputed Term (in the Context of Claim 1) | Hit Box's Proposed Construction | JFCA's Proposed Construction |
|---|---|---|
| **623 Patent**<br>said four movement push buttons … ***disposed*** closest to said left edge, a down movement button ***disposed*** between said left movement button and said middle boundary line and being the same distance to said top edge as said left movement button, a right movement button ***disposed*** between said down movement button and said middle boundary line and being closer to said bottom edge than said left and down movement buttons, and an up movement button at least partially ***disposed on*** said middle boundary line…<br><br>**867 Patent**<br>a first assemblage of buttons ***disposed on*** said first side portion for operation with a first hand of a user and a second assemblage of button ***disposed on*** said second side portion for operation with a second hand of a user; | Plain and ordinary meaning, which, to a POSITA is, "*located or positioned.*" | "Placed in contact with and supported by the top surface of." |

[5] Hit Box changes the order of its arguments to align with the order of arguments in JFCA's Opening Brief.

In its Opening Brief, JFCA seemingly abandons the proposed construction for "disposed" from its claim construction contentions, and only refers to that term in an attempt to shore up its unsupported four-part construction of "button." The entirety of JFCA's argument is as follows:

> Hit Box's construction of "button" not only flies in the face of the disavowal but it also is undercut by the 867 Claim language that requires that the button be "disposed on" the gaming surface. (867 Patent, Claim 1.) As discussed above, the housing of "push buttons" lies in part on the gaming surface. The proper construction of "disposed on" as supported by dictionary definitions (see AJCCS at pp. 6-7), supports this conclusion. Hit Box's construction ignores the word "on." (*Id*.)

JFCA's Opening Brief, p. 15.

*First*, JFCA's argument simply assumes that a disavowal occurred, where, as explained above, the record contains no evidence of any such disavowal and JFCA has failed to demonstrate one. *Second*, JFCA completely ignores the plain and ordinary meaning of "disposed on" and the context of the claim language in its effort to import structure into the claim. JFCA asks the Court to consider the term "disposed on" in a vacuum, completely divorced from the surrounding claim language and the rest of the intrinsic record, with the only focus being to manufacture a non-infringement position. It appears that JFCA agrees with Hit Box's plain-meaning construction of the term "disposed," as "located or positioned," but argues that the well-understood preposition "on" magically requires the Court to adopt the

four-part structure identified in JFCA's "push button" argument, because only in that construction—and no place else in the relevant record—are the buttons required to be physically on top of the controller. There is simply no support for this construction in the intrinsic or extrinsic record. The word "disposed" is used throughout the Asserted Patents in the same way and is used to describe the specific placement and arrangement of buttons with respect to the boundaries of the controller and the ergonomically and strategically desirable placement of the players' hands. *See* 623 Patent at 4:36-47; 4:56-60; 867 Patent at 4:47-60; 5:27-35. In the context of the claims of the 867 Patent,[6] the term "disposed" is used in connection with the term "on" to identify on which side of the controller a specific assemblage of buttons are located:

> [A] first assemblage of buttons **disposed on** said first side portion for operation with a first hand of a user and a second assemblage of button **disposed on** said second side portion for operation with a second hand of a user.

867 Patent at 4:36-47. When reading this claim language, a POSITA would clearly understand that a button may be located on a specific side of the controller without having to be physically on top of or attached to the surface of the controller, not to

---

[6] JFCA only references the 867 Patent in its "disposed on" argument. This decision is puzzling, given that the term is used in the same way in Claim 1 and 10 of the 623 Patent. *See e.g.* 623 Patent at 4:44-47 ("an up movement button at least partially **disposed on** said middle boundary line and being closer to said bottom edge than said right movement button") (emphasis added).

mention without also including all of the structural limitations that JFCA's erroneous proposal requires.

The term "disposed" is a non-technical word that is understandable and is used in its ordinary sense in the Asserted Patents. No construction is required because jurors would readily understand this term in the claim's context for purposes of determining infringement. *See Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1291 (Fed. Cir. 2015) (holding that courts need not construe "commonly used terms" that are "used in common parlance and ha[ve] no special meaning in the art"). However, to the extent the Court believes a construction of the disputed terms will be helpful, Hit Box contends that the plain meaning definition of "located or positioned" should be adopted.

**3. "middle boundary"**

| Disputed Term (in the Context of Claim 1) | Hit Box's Proposed Construction | JFCA's Proposed Construction |
|---|---|---|
| **623 Patent**<br>an all-push-button game controller surface being flat and extending horizontally between left and right edges and vertically between top and bottom edges, said left and right edges extending inwardly to a ***middle boundary*** line.<br><br>**867 Patent** | Plain and ordinary meaning, which, to a POSITA is, "*a dividing line at approximately the midpoint of an area.*" | "Equally distant from the left and right edges."<br><br>Defendant's proposed construction renders the term indefinite. |

| | | |
|---|---|---|
| a ***middle boundary*** dividing said game controller surface between said left and right edges to present a first side portion and a second side portion; | | |

Taken literally, JFCA's proposal is an attempt to construe the phrase "middle boundary" to mean the exact, geometric center of the controller. JFCA's Opening Brief, p. 18. Once again, JFCA asks the Court to misread the claims and specification of the Asserted Patents in an attempt to manufacture a non-infringement position. However, a correct reading of the claims, in light of the specification, demonstrates that the phrase "middle boundary" is a functional description of the area between the two hand positions, not the exact middle of the entire controller. As the intrinsic record makes clear, what is relevant to this invention is ensuring that the buttons are positioned to maximize the efficiency and ergonomic comfort of the player in order to improve accuracy of game play. 623 Patent at 2:1-4; 867 Patent at 2:19-28. Aesthetic or design decisions regarding the shape of the overall controller surface are ancillary to this essential purpose. Thus, if the inventors had intended this limitation to refer to the precise center of the controller, they could simply have said "center" or "middle" with no further explanation or modification. Instead, the language JFCA itself cites from the 623 Patent specifies that the "middle boundary" separates the "left hand position" from the "right hand position":

> said game controller surface including a <u>left hand position</u> extending inwardly from said left edge to said <u>middle boundary line</u> and a <u>right hand position</u> extending inwardly from said right edge to said <u>middle boundary line</u>, said left hand position including four movement push buttons and said right hand position including eight function buttons, each of said buttons having a generally circular shape[.]

623 Patent at 4:28-35 (emphasis added). This is also clear in the language of the 867 Patent, which claims a middle boundary dividing the controller "to present a first side portion and a second side portion." 867 Patent at 4:45-46. As demonstrated in Hit Box's Opening Brief, this is also exemplified in annotated FIG. 7, reproduced below, which shows multiple embodiments of the claimed invention with a middle boundary that is not in the exact center of the controller.




FIG. 7

Although Hit Box believes the term "middle boundary" should be given its plain and ordinary meaning, it provided the proposed construction, "a dividing line at approximately the midpoint of an area," to assist the Court to the extent that it

believed a construction would be helpful to the jury. JFCA disputes this construction using only attorney argument and improper opinion testimony to assert that the use of the term "approximately" renders this construction indefinite. JFCA's Opening Brief, p. 17 ("What is 'approximately the midpoint'?"). However, the term "approximately" is not inherently indefinite. As the Supreme Court has held, "the definiteness requirement must take into account the inherent limitations of language." *Nautilus, Inc. v. Biosig Instruments, Inc.,* 572 U.S. 898, 899 (2014). Similarly, the Federal Circuit has repeatedly held that "a patentee need not define his invention with mathematical precision." *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1384 (Fed. Cir. 2005); *Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1340 (Fed. Cir. 2003). A patentee may instead claim his invention qualitatively. For example, terms "such as 'approach each other,' 'close to,' 'substantially equal,' and 'closely approximate' . . . . are ubiquitous in patent claims. Such usages, when serving reasonably to describe the claimed subject matter to those of skill in the field of the invention, and to distinguish the claimed subject matter from the prior art, have been accepted in patent examination and upheld by the courts." *Andrew Corp. v. Gabriel Elecs., Inc.*, 847 F.2d 819, 821 (Fed. Cir. 1988) (reversing indefiniteness ruling).

JFCA's proposed construction ignores the claim language of the Asserted Patents and contradicts figures cited in the specification. Read in the context of the

claims, a POSITA would understand the term "middle boundary" as a boundary line dividing the two operative portions of the controller. Accordingly, the Court should reject JFCA's proposed construction and construe the term consistent with its plain and ordinary meaning.

**4. "partially horizontally aligned"**

| Disputed Term (in the Context of Claim 1) | Hit Box's Proposed Construction | JFCA's Proposed Construction |
|---|---|---|
| **867 Patent**<br>each function button in said bottom row being at least ***<u>partially horizontally aligned</u>*** with one of said function buttons in said top row; and | Plain and ordinary meaning, which, to a POSITA is, "*partially aligned along the horizontal axis.*" | Indefinite |

JFCA simply contends that the term "partially horizontally aligned" is indefinite and offers no competing construction. In fact, JFCA offers no analysis other than attorney argument and improper opinion testimony in support of its indefiniteness position. As the specification and drawings of the Asserted Patents make clear, and as Hit Box argued in its Opening Brief, JFCA's argument has no support and even the most generous reading of JFCA's Opening Brief does not show that JFCA has met its heavy burden of proving indefiniteness by clear and convincing evidence.

Importantly, a patent is only invalid for indefiniteness "if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to

inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus*, 572 U.S. at 901; *see also,* 35 U.S.C. § 282(a) ("A patent shall be presumed valid. Each claim of a patent...shall be presumed valid independently of the validity of other claims...."). To meet its burden of proving indefiniteness, JFCA must "demonstrate by clear and convincing evidence that one of ordinary skill in the relevant art could not discern the boundaries of the claim based on the claim language, the specification, the prosecution history, and the knowledge in the relevant art." *Id*. JFCA has not met this burden.

JFCA offers no evidence in support of its attorney argument that the disputed term is indefinite. JFCA only provides the *ipse dixit* statement that "The 867 Patent fails to inform, with reasonable certainty, how POSITA would understand the top row of function buttons and the bottom row of function buttons to be 'partially horizontally aligned with' each other." JFCA's Opening Brief, p. 19. Indeed, as shown in Hit Box's Opening Brief and repeated below, the Figures in the common specification clearly show what is meant by "partially horizontally aligned." JFCA asks the Court simply to ignore these easily understood drawings and focus on the claim language in isolation from their context. This cannot possibly overcome the presumption of definiteness by clear and convincing evidence.

In fact, the Federal Circuit has repeatedly rejected similar attempts to invalidate patents based on the improper opinion testimony of the accused infringer's

lawyers, observing, "[i]t is well established that conclusory statements of counsel or a witness that a patent is invalid do not raise a genuine issue of fact." *Biotec Biologische Naturverpackungen GmbH & Co. KG v. Biocorp, Inc.*, 249 F.3d 1341, 1353 (Fed. Cir. 2001); *see Mallinckrodt, Inc. v. Masimo Corp.*, 147 F. App'x 158, 179 (Fed. Cir. 2005) (rejecting indefiniteness challenge where the accused infringer "base[d] its indefiniteness challenge entirely on attorney argument") (unpublished opinion); *see also Cacace v. Meyer Mktg. (Macau Commercial Offshore) Co.*, 812 F. Supp. 2d 547, 559-60 (S.D.N.Y. 2011) (rejecting indefiniteness challenge where defendants offered nothing more than attorney argument to prove that those skilled in the art would not be able to discern the meaning of the disputed claim term).

As set forth in Hit Box's Opening Brief, the term "partially horizontally aligned" is not indefinite because the term is readily understood in the context of the claims and specification. Specifically, annotated FIG. 9, reproduced below, distinctly sets forth the arrangement of function buttons (5-12) without ambiguity. Each of the function buttons on the bottom row (6, 8, 10, and 12) shares a location on the horizontal axis with a corresponding function button on the top row (5, 7, 9, and 11).




FIG. 9

Accordingly, a POSITA would be able to discern the boundaries of the disputed term and a finding of indefiniteness under 35 U.S.C. § 112 would be clear error. To the extent that the Court believes a construction would be helpful, Hit Box proposes the plain and ordinary meaning construction of "partially aligned along the horizontal axis."

### 5. "of at least one of a portion"

| Disputed Term (in the Context of Claim 2) | Hit Box's Proposed Construction | JFCA's Proposed Construction |
|---|---|---|
| **867 Patent**<br>The hand-operated game controller of claim 1, wherein said third arcuate shape is symmetrical in curvature of ***at least one of a portion*** of said first arcuate shape and a portion of said second arcuate shape along said middle boundary. | Plain and ordinary meaning, which, to a POSITA is, "*the third arcuate shaped buttons have similarly shaped curves to the first and second arcuate shaped buttons along the middle boundary.*" | Indefinite |

Hit Box contends that the term "of at least one of a portion" does not require construction because a POSITA would understand the term in connection with the

claims and the specification. Hit Box's Opening Brief, pp. 22-24. Once again, JFCA fails to offer a competing construction and asserts that the term is indefinite. As set forth above, a patent is invalid for indefiniteness "if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus*, 572 U.S. at 901.

JFCA fails to meet the significant burden of showing, by clear and convincing evidence, that the disputed term renders Claim 2 of the 867 Patent invalid. JFCA ignores the intrinsic evidence, claim language, and common sense, all in an effort to divorce the disputed term from the surrounding claim language to assert that the term is indefinite when read in isolation. Specifically, JFCA uses bare attorney argument to assert that one skilled in the art would not know what "at least one of a portion" of said "first arcuate shape" means. JFCA's Opening Brief, p. 21.

As Hit Box argued in its Opening Brief, when read in its entirety, Claim 2 of the 867 Patent requires the third offset of buttons to be disposed in curves that are similarly shaped to the disposition of "at least one of a portion" of the first and second arcuate shape of buttons. The current Merriam-Webster dictionary defines "arcuate" as "curved like a bow." Exhibit B. Hit Box agrees with JFCA that one button cannot have an arcuate shape. Thus, this claim limitation can only be met where there are three or more buttons that can form an arcuate shape. In this context,

a POSITA would understand that the shape formed by the third arcuate shape of buttons will approximately mirror three or more buttons of "one of" the first or second arcuate shape. This understanding becomes clear when examining annotated FIG. 9, which is shown below for reference. The third set of buttons (1-3) is disposed in an arcuate shaped curve that is similar to the arcuate disposition of both the first set of buttons (5-11) and the second set of buttons (6-12). However, only "a portion" of the arcuate curve formed by those buttons is symmetrical to the arcuate shapes of the other two sets of buttons because the third arcuate shape has 3 buttons and the first and second arcuate shape each have 4 buttons.




FIG. 9

By ignoring the intrinsic evidence, and by failing to advance any evidence allegedly supporting its position, JFCA has failed to meet its burden to overcome the presumption of definiteness by clear and convincing evidence, and its argument must be rejected.

## III. CONCLUSION

For the reasons cited above, Hit Box respectfully requests that the Court adopt its proposed constructions of the disputed terms of the Asserted Patents, which are consistent with their plain and ordinary meanings.

Respectfully submitted, this14th day of December, 2022.

/s/ *Franklin M. Smith*
Franklin M. Smith
Michigan Bar No. P76987
*Admitted pro hac vice*
DICKINSON WRIGHT PLLC
2600 W. Big Beaver Rd., Suite 300
Troy, Michigan 48084
(248) 433-7393
fsmith@dickinsonwright.com

Steven R. Daniels
Georgia Bar No. 204865
DICKINSON WRIGHT PLLC
607 W. 3rd Street, Suite 2500
Austin, TX 78701
(512) 770-4200
sdaniels@dickinsonwright.com

Zachary L. Pelton
Michigan Bar No. P85197
*Admitted pro hac vice*
DICKINSON WRIGHT PLLC
500 Woodward Avenue, Suite 4000
Detroit, MI 48226
(313) 223-3500
zpelton@dickinsonwright.com

Kevin A. Maxim
Georgia Bar No. 478580
The Maxim Law Firm, P.C.
1718 Peachtree St., N.W., Suite 599
Atlanta, Georgia 30309
(404) 924-4272
kmaxim@maximlawfirm.com

***Attorneys for Defendant/Counterclaimant Hit Box LLC***

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**GAINESVILLE DIVISION**

| | |
|---|---|
| JUNK FOOD CUSTOM ARCADES, LLC<br><br>*Plaintiff/Counter-Defendant,*<br><br>vs.<br><br>HIT BOX, LLC<br><br>*Defendant/Counterclaimant.* | CIVIL ACTION No:<br>2:21-cv-00262-RWS |

**N.D. Ga. L.R. 26.3 CERTIFICATE OF SERVICE**

I HEREBY CERTIFY on this 14th day of December, 2022, that I caused the foregoing to be served upon counsel for Plaintiff/Counter-Defendant via electronic mail:

John L. North
jln@hkw-law.com

Martha Decker
md@hkw-law.com

Respectfully submitted, this14th day of December, 2022.

/s/ *Zachary L. Pelton*
Zachary L. Pelton